1
2
3
<u>4</u>
5
6
7 UNITED STATES DISTRICT COURT

8 EASTERN DISTRICT OF CALIFORNIA

9

10 MARCELO HERRERA,      Case No. 1:16-cv-00158-LJO-MJS (HC)

11      Petitioner,      **FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS**

12      v.      **CORPUS**

13 WILLIAM SULLIVAN, Warden

14      Respondent.

15

16

17

18      Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas

19 corpus under 28 U.S.C. § 2254. William Sullivan, Warden of Corcoran State Prison, is

20 hereby substituted as the proper named respondent pursuant to Rule 25(d) of the

21 Federal Rules of Civil Procedure. Respondent is represented by Justain P. Riley of the

22 Office of the California Attorney General.

23 **I.**      **Procedural History**

24      Petitioner is currently in the custody of the California Department of Corrections

25 and Rehabilitation pursuant to a judgment of the Superior Court of California, County of

26 Tulare for attempted murder, aggravated mayhem, first degree robbery, first degree

27

28

burglary, assault with a deadly weapon, and active participation in a street gang. (Lodged Doc. 1 at 2.) He is serving an aggregate sentence of 120 years to life. (Id.)

Petitioner appealed his conviction and sentence (Lodged Doc. 2) and, on June 13, 2014, the California Court of Appeal for the Fifth Appellate District affirmed the conviction and ordered additional enhancements (Lodged Doc. 5). The California Supreme Court granted a petition for review, and ordered reconsideration of the Court of Appeal's imposition of additional enhancements. (Lodged Doc. 7.)

On November 10, 2014, the Fifth District Court of Appeal issued a reasoned decision in which it reversed its imposition of enhancements and affirmed the judgement in all other respects. (Lodged Doc. 1.)

On September 21, 2015, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court. (Lodged Doc. 9.) It was summarily denied on December 16, 2015. (Lodged Doc. 0.)

Petitioner filed the instant federal habeas petition on January 29, 2016. (ECF No. 1.) Respondent filed an answer to the petition on May 31, 2016. (ECD No. 17.) Petitioner filed no traverse and the time for doing so has passed. The matter stands ready for adjudication.

## II. Factual Background[1]

> Around 3:00 a.m. on July 11, 2010, Agustin Maldonado responded to a knock at the door and two men—later identified as defendant and Jario Aguiniga—pushed their way into Maldonado's house. They knocked Maldonado to the floor and "knifed" him in the face, arms, and stomach. When Maldonado tried to get up, he was knifed in the neck. Maldonado saw a single blade during the attack, but he could not tell which one of the men held the knife. They were both on top of him at first. They also struck Maldonado with their hands and feet.
>
> After attacking Maldonado, the two men pursued Juan Carlos Bernal, one of Maldonado's houseguests, to a bedroom

---

[1] The Fifth District Court of Appeal's summary of the facts in its November 10, 2014 opinion is presumed correct. 28 U.S.C. § 2254(e)(1).

2

where they demanded money. Bernal identified defendant and testified that defendant shoved him and showed him a knife, while saying they were going to kill him. Defendant then knocked Bernal onto the bed and took his wallet and cell phone. Meanwhile, defendant's companion went through the room, pulling out drawers and looking for money.[fn3] After finding ammunition in one of the drawers, they became angry and started asking Bernal the location of the gun, which Bernal did not know. When they were unable to find a gun, they said "Let's go."

> FN3: After the incident, Maldonado discovered a watch and a few items of jewelry were missing from his bedroom.

Defendant was tied to the July 11, 2010, incident by fingerprint evidence found at Maldonado's residence and another residence located on the same property. Defendant was subsequently arrested and made incriminating statements during an interview with Porterville Police Detective Richard Carrillo, implicating himself in the robbery but denying he stabbed Maldonado.

Porterville Police Officer Christopher McGuire testified as an expert regarding criminal street gangs. In McGuire's opinion, defendant was an active member of the Varrio Central Poros (VCP) gang, a local Norteño gang in Porterville, and Aguiniga was an active member of the Eastside Varrio Poros (ESVP) gang, another local Norteño gang. Presented with a hypothetical based on the circumstances of the July 11, 2010, incident, McGuire opined the crimes were committed in association with a criminal street gang "because you have two active documented gang members associating with one another" and "assisting one another" in committing the crimes. There was also "a benefit in getting a firearm potentially" as "a firearm is the most sought-after weapon for a gang."

People v. Herrera, No. F064425, 2014 WL 5804540, at *2 (Cal. Ct. App. Nov. 10, 2014).

(ECF No. 17-1.)

## III. Discussion

### A. Jurisdiction

Relief by way of a writ of habeas corpus extends to a prisoner under a judgment of a state court if the custody violates the Constitution, laws, or treaties of the United

3

States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered a violation of his right to due process as guaranteed by the U.S. Constitution. Petitioner was convicted and sentenced in this district and remains incarcerated here. 28 U.S.C. § 2241(d); 2254(a). The Court concludes that it has jurisdiction over the action.

### B.    Legal Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of AEDPA; thus, it is governed by its provisions.

Under AEDPA, a petition for a writ of habeas corpus by a prisoner in custody under a judgment of a state court may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n.7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in state court proceedings if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

### 1.    Contrary to or an Unreasonable Application of Federal Law

A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-06). "AEDPA does not require state and federal courts to wait for some nearly identical

4

factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that even a general standard may be applied in an unreasonable manner" <u>Panetti v. Quarterman</u>, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted). The "clearly established Federal law" requirement "does not demand more than a 'principle' or 'general standard.'" <u>Musladin v. Lamarque</u>, 555 F.3d 830, 839 (2009). For a state decision to be an unreasonable application of clearly established federal law under § 2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle (or principles) to the issue before the state court. <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70-71 (2003).

A state court decision will involve an "unreasonable application of" federal law only if it is "objectively unreasonable." <u>Id.</u> at 75-76 (quoting <u>Williams</u>, 529 U.S. at 409-10); <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-25 (2002). In <u>Harrington v. Richter</u>, the Court further stressed that "an unreasonable application of federal law is different from an <u>incorrect</u> application of federal law." 131 S. Ct. 770, 785 (2011) (citing <u>Williams</u>, 529 U.S. at 410) (emphasis in original). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." <u>Id.</u> at 786 (citing <u>Yarborough v. Alvarado</u>, 541 U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts have in reading outcomes in case-by-case determinations." <u>Id.</u>; <u>Renico v. Lett</u>, 130 S. Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 122, 129 S. Ct. 1411, 1419 (2009) (quoting <u>Richter</u>, 131 S. Ct. at 786).

## 2. Review of State Decisions

"Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the claim rest on the same grounds." <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991). This is referred to as the

"look through" presumption. Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198 (9th Cir. 2006). Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion, "does not require that there be an opinion from the state court explaining the state court's reasoning." Richter, 131 S.Ct. at 784-85. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Id. ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

Richter instructs that whether the state court decision is reasoned and explained, or merely a summary denial, the approach to evaluating unreasonableness under § 2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786. Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer, 538 U.S. at 75). AEDPA "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." Id. To put it yet another way:

> As a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 786-87. This is because "state courts are the principal forum for asserting constitutional challenges to state convictions." Id. at 787. It follows from this consideration that § 2254(d) "complements the exhaustion requirement and the doctrine

of procedural bar to ensure that state proceedings are the central process, not just a preliminary step for later federal habeas proceedings." Id. (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977)).

### 3. Prejudicial Impact of Constitutional Error

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness). Some constitutional errors, however, do not require that the petitioner demonstrate prejudice. See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659 (1984). Furthermore, where a habeas petition governed by AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the Brecht standard. Avila v. Galaza, 297 F.3d 911, 918, n.7 (2002); Musalin v. Lamarque, 555 F.3d 830, 834 (9th Cir. 2009).

## IV. Review of Petition

### A. Claim One: Ineffective Assistance of Trial Counsel

Petitioner claims that his trial counsel was ineffective in allowing the prosecutor to admit evidence of Petitioner's prior crimes as improper evidence of Petitioner's disposition or propensity to commit the crimes charged.

### 1. State Court Decision

The last reasoned decision of the state court summarily denied Petitioner's ineffective assistance of counsel claim.[2] Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion "does not require that there be

---

[2] Petitioner presented this claim only to the California Supreme Court (see Lodged Doc. 9), and the California Supreme Court denied his petition in a summary decision (Lodged Doc. 10). Accordingly, even with the benefit of the look-through doctrine, Ylst v. Nunnemaker, 501 U.S. at 804-05, there is no reasoned decision provided by the state courts.

an opinion from the state court explaining the state court's reasoning." <u>Harrington</u>, 131 S. Ct. at 784-85. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." <u>Id.</u> ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

<u>Harrington</u> instructs that whether the state court decision is reasoned and explained, or merely a summary denial, the approach to evaluating unreasonableness under § 2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." <u>Id.</u> at 786.

## 2. Legal Standard

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). <u>Canales v. Roe</u>, 151 F.3d 1226, 1229 (9th Cir. 1998). In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the Court must consider two factors. <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); <u>Lowry v. Lewis</u>, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. <u>Strickland</u>, 466 U.S. at 687. The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. <u>Id.</u> at 688; <u>United States v. Quintero-Barraza</u>, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. A court

indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 687; see also, Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

Second, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different." Strickland, 466 U.S. at 694. Petitioner must show that counsel's errors were "so serious as to deprive defendant of a fair trial, a trial whose result is reliable." Id. at 687. The Court must evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1348; United States v. Palomba, 31 F.3d 1456, 1461 (9th Cir. 1994).

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. at 697. Since the defendant must affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily fail. However, there are certain instances which are legally presumed to result in prejudice, e.g., where there has been an actual or constructive denial of the assistance of counsel or where the State has interfered with counsel's assistance. Id. at 692; United States v. Cronic, 466 U.S., at 659, and n. 25 (1984).

As the Supreme Court reaffirmed in Harrington v. Richter, meeting the standard for ineffective assistance of counsel in federal habeas is extremely difficult:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." Williams, supra, at 410, 120 S. Ct. 1495, 146 L. Ed. 2d 389. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. 111, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251, 261 (2009) (internal quotation marks omitted).

Harrington v. Richter, 131 S. Ct. at 785-86.

"It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 786. "As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." Id. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

Accordingly, even if Petitioner presents a strong case of ineffective assistance of counsel, this Court may only grant relief if no fairminded jurist could agree on the correctness of the state court decision.

### 3. Background

Petitioner's claim concerns the admission of evidence and testimony regarding his prior criminal history and gang activity.

On August 6, 2010, Petitioner was charged with participation in a criminal street gang, both as a stand-alone offense and as an enhancement. (1CT at 1-14.)

On May 19, 2011, trial counsel Garcia substituted in as attorney of record. (1CT at 214.)

On September 29, 2011, Garcia filed a motion to set aside the information on the ground that there was insufficient information to support presenting a jury with charges and allegations regarding Petitioner's gang participation and enhancements. (1CT at 223; see also 5RT at 29-30; 6RT at 43.) The motion was denied. (5RT at 30.)

Trial commenced on October 11, 2011. (6RT.) During pretrial proceedings, the parties addressed the State's motion in limine to admit evidence of Petitioner's prior convictions. (6RT at 40.) Garcia argued that the prior convictions should not be admitted because there was no evidence to indicate that offenses to be tried were gang-related and the prior conviction evidence was more prejudicial than probative. (6RT at 43-44.) The trial court concluded that the evidence was more probative than prejudicial and that the proffered testimony regarding Petitioner's criminal history would be relevant. (6RT at 47.) Accordingly, the trial court concluded that the evidence was admissible. (Id.)

During trial, the prosecutor elicited opinion testimony from a gang expert, Christopher McGuire, regarding whether Petitioner was an active gang member. (10RT at 697.) This testimony and the related exchange between counsel and the court forms the basis for Petitioner's claim in the instant action, and accordingly it is reproduced verbatim:

> Q. Yesterday we left off with 05-1542. I'd like to turn your attention to PPD Case Number 15 06-0057, contact date of January 3rd, 2006. Have you had an opportunity to review the report generated in that Porterville Police Department case?
>
> A. Yes, I have.
>
> Q. Was there anything significant contained in those reports that helped you form an opinion as to whether or not the defendant, Marcelo Herrera is an active Norteno gang member?
>
> A. Yes, I was.
>
> Q. And what in that report helped you form an opinion or what was relevant to your opinion?

A. In the report that we're talking about, the 06 --

Q. 06-0057.

A. Mr. Herrera, during the classification process, states that he still has association with the criminal street gang VCP. He commits a gang-related crime. He's in association with another identified gang member when the crime is carried out. And during the investigation, there's documents that are located that contain gang writings that identify Mr. Herrera by his moniker.

And then there is a charge of 186.22, the criminal street gang enhancement, that goes along with the crimes that he committed.

Q. Were the two subjects, the subjects in that, Rebecca Valdivinos and Michael Lujan?

A. Rebecca Valdivinos was charged. Michael Lujan, I don't believe he was charged in the investigation, no.

Q. Are those two northern gang members?

A. Yes.

Q. In this case, you have an instance of the defendant committing a crime with Rebecca Valdivinos, a Norteno gang member, as well as "Big Mike," Mike Lujan, also a gang member?

A. That's correct.

Q. That's committing a crime with and in association with other gang members, correct?

A. That is correct.

Q. All right. What about the nature of the offense, was it one of the primary activities of the Norteno criminal street gang?

A. Yeah.

Would you like me to go over the offense?

Q. Yes.

What type of offense was it?

A. January of 2006, Officer Gary Miller with the Porterville Police Department, he was dispatched to a county location east of the incorporated city of Porterville in regards to two victims that had been located by the Tulare County Sheriff's Department. The two victims advised they had been the victim of a carjacking, and it was determined that the crime had actually occurred in the city of Porterville.

Officer Miller was dispatched out to the county address to meet with the two victims that, basically, had been left on the side of the road.

Officer Miller arrived. He interviewed the victims and determined that they'd been at a pool hall which is located in a strip mall in the central part of Porterville. The pool hall is frequented by teenagers and young adults, kind of an arcade. They have pool tables.

While there at the business, they observed Mr. Herrera, Rebecca Valdivinos, and a third Hispanic male believed to be Mr. Lujan being very loud, talking very loudly in front of the business.

While the two male individuals were in front of the business, they were approached by the Hispanic male who demanded change. One of the -- one of the victims provided this male individual with some change, and soon later, they decided to leave the pool hall, and one of the victim's parents. They were in a GMC Yukon.

As they're leaving the business onto Indiana Street, they observed the same three subjects, one of them being Mr. Herrera, Rebecca Valdivinos, and Mr. Lujan. It appears there's a disturbance. As they drive by, it is, in fact, a disturbance.

Mr. Herrera, Rebecca Valdivinos, and Mr. Lujan approached the two victims in the vehicle. Mr. Herrera and Mr. Lujan both pull out firearms, brandished the firearms at the two victims in their vehicle demanding that the victims exit the vehicle.

There's a conversation between the victims and the three suspects. At which time the three suspects entered the vehicle with the victims. Mr. Herrera is seated behind the driver and the person believing to be Mr. Lujan seated behind the passenger. The driver of the Yukon stated that Mr. Herrera took the firearm, pressed the muzzle of the firearm to

the back of his forehead, and kept it there while he was giving him directions on where to drive.

The passenger gave the same account, that the third Hispanic male took his firearm, pressed it to the back of his head, and as they're giving them directions on where to drive, Mr. Herrera made statements that if they did not comply with their orders that they would kill or harm them.

Both victims stated that they believed that they were going to be driven out into the country and that they were ultimately going to be killed.

As they're driving towards the east unincorporated area of Porterville, Mr. Herrera, according to the victim, begins choking him while he's driving . The victim stated he was unable --

MR. GARCIA: Your Honor, may we approach?

THE COURT: Yes.

(Whereupon, the following proceedings were held at Bench.)

MR. GARCIA: I'd like to object on the record but I didn't want to do it in front of the jury. I thought this was a matter we discussed in limine regarding him bringing out the details of this case. I don't think there was a conviction for it.

MR. MEYER: There is.

MR. GARCIA: There's a violation, but – I think under 352, it's completely prejudicial. I know that they're given some room to talk about the prior gang activity. Obviously the dilemma is always even if there's no conviction, they can bring out everything and, basically, convict him right there with hearsay. But I thought that this was a bifurcated portion and I object to that coming in.

Because it already came out, I'd ask for a mistrial given the fact that he brought out detailed facts based on statements given to him that had they been true, he wouldn't be sitting here, he'd be in prison for life for that, but, nevertheless.

I'm referring to statements about my client getting a gun and pointing it to the back of somebody's head.

Submit on that.

14

THE COURT: Let me hear from Mr. Meyer.

MR. MEYER: Well, your Honor, this is – number one, Mr. Garcia is provided with the information in the gang packet related to this testimony. This is a gang-related offense committed with other gang members. He was convicted of a 211, robbery. It is a primary activity of the gang. It goes to his knowledge of the primary activities of the gang for purposes of Count 8. 186.22(a).

So long as it's the special allegation that he's an active participant in a gang, it's relevant to his opinion, this offense.

THE COURT: Well, I understand that, but my concern is that I think that it can be sanitized in a way that we don't get into, as I described earlier, a minitrial of these issues. Because it can be summarized in the following fashion: Convicted of a 211, the circumstances were that he was with other gang members and that he held the gun to someone while the offense was committed, but -- rather than making statements about he said or she said and getting to the fine details of that.

I think it can be sanitized to a way where it's presented in a clinical fashion because he's not an expert and he's relying essentially on the Information, not the details of it. And the essential details are committed the offense with other gang members and this is a gang type of crime. Those are the three essential details that he has to focus on. All of the fine details, I think, get into that 352 area where it is very time-consuming, and it does get into very prejudicial matters because the details themselves can be even more prejudicial.

And so I'm going to direct you to just focus on the essential elements that establish the crime, type of the crime that gangs commit, he was there, and he was an active participant.

MR. MEYER: Got it.

MR. GARCIA: Will the Court rule --

THE COURT: And with respect to the motion for a mistrial, I'm going to deny your motion.

Thank you .

(Whereupon, the following proceedings were held in open court.)

15

1    THE COURT: Continue, Mr. Meyer.

2    BY MR. MEYER:

3    Q. Was Mr. Herrera arrested in that case?

4    A. He was, yes.

5    Q. To your knowledge was there a conviction in that case?

6    A. There was, yes.

7    MR. MEYER: At this time the People ask that People's
8    Number 33 be admitted into evidence.

9    THE COURT: Any objection to Exhibit 33?

10   MR. GARCIA: No, your Honor.

11   THE COURT: Exhibit 33 will be received in evidence.

12   (People's Exhibit 33, Document, 7 was received into
13   evidence.)

14   BY MR. MEYER:

15   Q. Now, was that conviction for a robbery in that case?

16   A. Yes, it was a robbery charge.

17   Q. And that is one of the primary activities of the Norteno
18   criminal street gang, correct?

19   A. It is, yes.

20   Q. Of the factors that you're talking about earlier, we have
     him committing a primary activity that's committed by the
21   Norteno gang, we have him committing in the presence of
     other Norteno criminal gang members?
22

23   A. That's correct.

24   Q. And so after reviewing that case, how many of the factors.
     do you see there in evaluating whether he's a Norteno
25   criminal street gang member?

26   A. Obviously, those two factors.

27   Again, during the investigation, I believe the detectives
28   executed a search warrant at Mr. Herrera's residence where

                                16

they found writing, gang writing documents that identified him by his moniker of "Bam" or "Bam-Bam."

Q. So that would be a third criteria?

A. Yes.

Q. Again, like the previous case we talked about, PPD 06-0057, you have three of the criteria?

A. Yes.

Q. That alone is enough to validate him right there --

A. Yes.

Q. -- from one contact?

Turning to Porterville Police Department Case Number 06-10267 with a contact date of December 30th, 2006. Have you had an opportunity to review that case?

A. I have, yes.

Q. And did that case involve an assault on an individual?

A. It did, yes.

Q. And during that assault, were gang slurs yelled out at all?

A. Yes, they were.

Q. And can you tell the jury what gang slurs were yelled out.

A. The gang members involved in this violent crime approached a victim and stated -- "east side" and "poros" were the gang slurs that were given.

Q. And then in that case, did the victim reply that he didn't bang, and he was assaulted?

A. He was, yes.

Q. Now, in investigating that case, was the defendant Marcelo Herrera contacted during that investigation?

A. He was, yes.

Q. And was he arrested in regards to that case?

A. Yes, he was.

Q. Okay. And was there a conviction, to your knowledge, for that case?

A. There was, yes.

Q. And did that conviction, did that include a gang enhancement on it?

A. It did, yes.

Q. All right. So in that case, what were the factors you see in helping you evaluate whether he's a Norteno gang member?

A. Again, committing a crime in association with the gang, with the gang enhancement. Committing the gang-related crime. Secondly, associating with known gang members, using gang signs or gang slurs identifying or promoting his gang.

Q. And is an assault with a deadly weapon, is that a primary activity of the Norteno criminal street gang?

A. It is, yes, one of them.

MR. MEYER: At this time, the People ask to admit People's number 34 into evidence.

THE COURT: Any objection to Exhibit 34?

MR. GARCIA: No, your Honor.

THE COURT: 34 will be received in evidence.

(People's Exhibit 34, Document,14 was received into evidence.)

BY MR. MEYER:

Q. Now, you've also reviewed that he is a gang registrant as of 2009, correct?

A. I have, yes.

Q. Just for clarification for the jury, that is a Court-ordered process?

A. It is, yes.

Q. But generally when somebody is ordered to register as a gang member, that means they've been convicted of a gang-related offense?

A. That's correct.

Q. Okay . So is that helpful in your evaluation that the Court tells a subject to go register as a gang member?

A. It is, yes.

Q. Now, you also reviewed other documents as well, right?

A. Yes.

Q. Some field identifications?

A. Yes.

Q. Some other reports.

We've just focused on some certain incidents, correct?

A. That's correct.

Q. But after reviewing everything that you gathered and everything received upon your request from local agencies, did you form an opinion as to whether or not on July 11th, 2010, Mr. Marcelo Herrera was an active participant in a criminal street gang?

A. I did, yes.

Q. And what is your expert opinion as to whether he was an active participant in a criminal street gang on that date?

A. He was.

(Lodged Doc. 9, Exh. A; 10RT at 697-709.)

### 4.    Analysis

Petitioner contends that trial counsel was unprepared, did not review the information packets containing Petitioner's criminal history, and thus allowed the improper presentation of testimony and evidence of Petitioner's prior crimes. Respondent argues that trial counsel repeatedly, albeit unsuccessfully, challenged the admissibility of evidence of Petitioner's prior crimes and that Petitioner's attack on

counsel's preparation is unsupported. In any event, Respondent argues, the Fifth District Appellate Court concluded in Petitioner's direct appeal that the evidence of Petitioner's prior crimes was admissible under California evidence law and due process, generally. Accordingly, Respondent argues, Petitioner suffered no prejudice from any ineffectiveness of trial counsel. For the reasons set forth below, the Court concludes that the California Supreme Court reasonably rejected Petitioner's claim that trial counsel was ineffective.

First, Petitioner's claim that trial counsel was unprepared is speculative and unsupported. Garcia's arguments during the pretrial proceedings reflect that he was familiar with the charges at issue, the evidence to be presented, and the potential prejudice that could result from Petitioner's criminal history. (6RT at 43-44.) Petitioner does not describe what more Garcia could or should have done, or how additional preparation could have aided Garcia's attempts to exclude Petitioner's criminal history. These arguments are therefore insufficient to warrant habeas relief. See James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations of ineffective assistance which are unsupported by a statement of specific facts do not warrant habeas relief.")

Second, the record reflects that Garcia attempted to exclude testimony and evidence regarding Petitioner's prior crimes and gang activity, by arguing against the State's motion in limine, objecting to the testimony of McGuire, and moving for a mistrial following the introduction of potentially prejudicial evidence. In so doing, Garcia was able to limit the level of detail with which prior crimes evidence was described. A fairminded jurist could conclude that these efforts constituted an objectively reasonable exercise of counsel's professional judgment. Strickland, 466 U.S. at 687.

Finally, the Court notes that the Fifth District Court of Appeal rejected argument that the evidence concerning his criminal history and gang activity was inadmissible. Herrera, No. 2014 WL 5804540, at 9-11. Specifically, the Court concluded that the probative value of the evidence outweighed its prejudicial effect, and that the evidence

was not so inflammatory that it violated Petitioner's due process rights. Id. Thus, a fairminded jurist could conclude that Garcia had no chance of excluding Petitioner's prior crimes, regardless of his level of preparation or performance.

Petitioner cannot show that there was no reasonable basis for the California Supreme Court to deny relief. Harrington, 131 S. Ct. at 784-85. Accordingly, he is not entitled to relief on this claim.

## B.    Claim Two: Ineffective Assistance of Appellate Counsel

Petitioner argues that appellate counsel should not have argued that the trial court abused its discretion in admitting evidence of Petitioner's prior crimes, but instead should have argued that trial counsel was ineffective because he was insufficiently prepared to challenge the admission of the prior crimes evidence.

### 1.    State Court Decision

As with Plaintiff's claim of ineffective assistance of trial counsel, the last reasoned decision of the state court summarily denied Petitioner's ineffective assistance of appellate counsel claim.[3] Accordingly, this Court "must determine what arguments or theories supported or, as here, could have supported, the state court's decision; then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786.

### 2.    Legal Standard

Petitioner claims ineffective assistance of appellate counsel. The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right. Evitts v. Lucey, 469 U.S. 387, 391-405, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985). Claims of ineffective assistance of appellate counsel are reviewed according to the standard set out above in claim one under Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

---

[3] As with his ineffective assistance of trial counsel claim, Petitioner presented this claim only to the California Supreme Court (see Lodged Doc. 9), and the California Supreme Court denied his petition in a summary decision (Lodged Doc. 10). Accordingly, even with the benefit of the look-through doctrine, Ylst v. Nunnemaker, 501 U.S. at 804-05, there is no reasoned decision provided by the state courts.

Smith v. Robbins, 528 U.S. 259, 285 (2000); Moormann v. Ryan, 628 F.3d 1102, 1106 (9th Cir. 2010). The petitioner must show that counsel's performance was objectively unreasonable, which in the appellate context requires the petitioner to demonstrate that counsel acted unreasonably in failing to discover and brief a merit-worthy issue. Smith, 528 U.S. at 285; Moormann, 628 F.3d at 1106. The petitioner also must show prejudice, which in this context requires the petitioner to demonstrate a reasonable probability that, but for appellate counsel's failure to raise the issue, the petitioner would have prevailed in his appeal. Smith, 528 U.S. at 285-86; Moormann, 628 F.3d at 1106.

### 3. Analysis

Petitioner's claim of ineffective assistance of appellate counsel fails on two grounds. First, a fairminded jurist could reasonably conclude that a challenge to the preparedness of trial counsel would be more properly brought in a petition for writ of habeas corpus, rather than in a direct appeal. This is because, in California, a successful showing of error and prejudice must be made solely from the appellate record. In re Carpenter, 9 Cal. 4th 634, 646 (1995) ("Appellate jurisdiction is limited to the four corners of the record on appeal."). However, a claim of ineffective assistance of trial counsel often requires consideration of factors not reflected in the record. In re Darlice C., 105 Cal. App. 4th 459, 463 (Cal. App. 3d 2003). Thus, the state court could reasonably determine that appellate counsel was justified in refraining from bringing such a claim on direct appeal.

Second, the state court could reasonably determine that Petitioner was not prejudiced by the failure to raise this argument on appeal. As stated above, trial counsel objected unsuccessfully to the admission of Petitioner's prior crimes, and the Fifth District Court of Appeal concluded that the trial court did not abuse its discretion in admitting this evidence. Herrera, 2014 WL 5804540, at *9-11. There is nothing to suggest that Petitioner would have prevailed in his appeal had counsel's supposed lack of preparation been raised.

Accordingly, Petitioner cannot show that there was no reasonable basis for the California Supreme Court to deny relief. <u>Harrington</u>, 131 S. Ct. at 784-85. Accordingly, he is not entitled to relief on this claim.

**V.    Conclusion and Recommendation**

Based on the foregoing, it is HEREBY RECOMMENDED that the petition for writ of habeas corpus be DENIED.

The findings and recommendation are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **thirty** (30) days after being served with the findings and recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    May 30, 2017        /s/ *Michael J. Seng*
                                  UNITED STATES MAGISTRATE JUDGE